DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFREY J. PROSSER, | ) | Chapter 7 |
| | ) | Case No. 06-30009 (JKF) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| INNOVATIVE COMMUNICATION CORPORATION, | ) | Chapter 11 |
| | ) | Case No. 07-30012 (JKF) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STAN SPRINGEL, as Chapter 11 Trustee | ) | |
| of the ESTATE OF INNOVATIVE | ) | |
| COMMUNICATION CORPORATION, and JAMES | ) | |
| P. CARROLL, as Chapter 7 Trustee of | ) | |
| the ESTATE OF JEFFREY J. PROSSER, | ) | |
| | ) | |
| Plaintiffs/Appellees, | ) | |
| | ) | |
| v. | ) | Civil No. 2011-113 |
| | ) | |
| JEFFERY J. PROSSER, DAWN PROSSER, | ) | |
| JUSTIN PROSSER, MICHAEL PROSSER, SYBIL | ) | |
| G. PROSSER, MICHELLE LABENNETT, and | ) | |
| LYNDON A. PROSSER, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |
| _____ | ) | |

ATTORNEYS:

Stan Springel
Dallas, TX
       *Pro se*

**Samuel H. Israel, Esq.**
**Yann Geron, Esq.**
**William H. Stassen, Esq.**
Fox Rothschild LLP
New York, NY
**Bernard C. Pattie, Esq.**
Law Offices of Bernard C. Pattie
St. Croix, VI
> *For the plaintiff/appellee James P. Carroll, Chapter 7*
> *Trustee,*

**Lawrence H. Schoenbach, Esq.**
Law Office of Lawrence H. Schoenbach
New York, NY
**Norman Anthony Abood, Esq.**
Law Office of Norman A. Abood
Toledo, OH
**Robert F. Craig, Esq.**
Robert F. Craig, PC
Omaha, NE
> *For the defendant/appellant Jeffrey J. Prosser,*

**Jeffrey B. C. Moorehead**
Jeffrey B. Moorehead, P.C.
St. Croix, VI
> *For the defendant/appellant Dawn Prosser,*

**Justin Prosser**
> *Pro se defendant/appellant,*

**Michael Prosser**
> *Pro se defendant/appellant,*

**Sybil G. Prosser**
> *Pro se defendant/appellant,*

**Michelle LaBennett**
> *Pro se defendant/appellant,*

**Lyndon Prosser**
> *Pro se defendant/appellant,*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the appeal of Jeffrey J. Prosser ("Jeffrey Prosser"), Dawn E. Prosser ("Dawn Prosser"), Justin Prosser, Michael Prosser, Sybil G. Prosser, Michelle LaBennett, and Lyndon Prosser (collectively, the "Prossers") from the Bankruptcy Division's September 29, 2011, order denying their motion for relief from judgment.

## I.   FACTUAL AND PROCEDURAL HISTORY

This appeal arises out of the lengthy, and ongoing, bankruptcy of Innovative Communication Corporation ("ICC"), a Virgin Islands telecommunications company, and its former owner and chief executive officer, Jeffrey Prosser.

On October 19, 2007, the appellee Stan Springel ("Springel"), as the Chapter 11 Trustee of the Bankruptcy Estates of ICC, as well as the related entities Emerging Communications, Inc., and Innovative Communication Company, LLC, initiated the underlying adversary proceeding against the Prossers. James P. Carroll (Carroll), the Chapter 7 Trustee of the Bankruptcy Estate of Jeffrey Prosser subsequently joined the adversary proceeding as a co-plaintiff. Together, Springel and Carroll asserted, among other things, several claims to "turnover" property of the estate, pursuant to Title 11, Section 542 of the United States Code.

Springel and Carroll sought the turnover of numerous pieces of property, allegedly belonging to the Estates of either ICC or Jeffrey Prosser, yet in the possession of one or more of the Prossers. Among other things, they sought the turnover of various wines; cigars; artwork and furnishings; real property located at Estate Shoys in St. Croix, United States Virgin Islands; and ownership interests in North Shore Real Estate Corporation.

The Prossers moved to dismiss the adversary proceeding on the ground that the Bankruptcy Division lacked subject-matter jurisdiction. The Bankruptcy Division denied the motion.

Thereafter, upon the conclusion of a fifteen-day trial, the Bankruptcy Division issued a 130-page Memorandum Opinion and Judgment (the "Judgment"). The Judgment ordered the Prossers to turnover

> (1) wines, (2) cigars, (3) Jeffrey Prosser's one-half interest in art work and furnishings either in the Prossers' homes or in storage for use in the Prossers' homes; (4) Jeffrey Prosser's one-half interest in Estate Shoys [real property located in St. Croix, United States Virgin Islands]; (5) Jeffrey Prosser's one-half interest in North Shore Real Estate Corporation.

(Bankr. Div.'s Feb. 9, 2011, J. at 2 [hereinafter "J."].)

The Prossers appealed the Judgment. On August 8, 2011, this Court dismissed that appeal as untimely.

*In re: Prosser*
Civil No. 2011-113
Memorandum Opinion
Page 5

The Prossers then moved for relief from the Judgment from the Bankruptcy Division pursuant to Federal Rule of Civil Procedure 60(b)(4). The Bankruptcy Division denied the motion. The Prossers timely appealed the denial. The Prossers argue that the Bankruptcy Division lacked subject-matter jurisdiction over the underlying adversary proceeding, and that it therefore should have declared the Judgment void.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to review the "final judgments, orders, and decrees" of bankruptcy courts pursuant to section 158(a) of Title Twenty-Eight of the United States Code.[1]

The Court will review the bankruptcy court's findings of fact for clear error and will exercise plenary review over questions of law. *In re Barbel*, Civ. No. 01-221 (RLF) 2004 U.S. Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004) ("A district court reviews the Bankruptcy Division's conclusions of law *de novo* but may only review findings of fact that are clearly erroneous." (citing Fed. R. Bankr. P. 8013; *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 (7th Cir. 1988)), *aff'd* 183 Fed. App'x 227 (3d Cir. 2006). "[A] bankruptcy court's exercise of

---

[1] Title 28, Section 158 of the United States Codes provides, in pertinent part: "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157]. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a).

*In re: Rosario*
Civil No. 2011-113
Memorandum Opinion
Page 6

its equitable power is reviewed only for an abuse of

discretion." *In re Mou San Rim*, Civ. No. 10-1066 (DMC), 2010

U.S. Dist. LEXIS 117458, at *3-4 (D.N.J. Nov. 3, 2010).

A motion for relief from judgment is ordinarily addressed

to the sound discretion of the trial judge. However, if the

court was powerless to enter the judgment in the first instance,

the judgment is void and "the trial judge has no discretion and

must grant appropriate . . . relief." *Textile Banking Co. v.*

*Rentschler*, 657 F.3d 844, 851 (7th Cir. 1981) (citing *In re Four*

*Seasons Sec. Law Litig.*, 502 F.2d 834 (10th Cir.), *cert. denied*,

419 U.S. 1034 (1974)).

## III. <u>DISCUSSION</u>

Federal Rule of Civil Procedure 60(b)(4) permits a court to

relieve a party from a final judgment if "the judgment is void."

Fed. R. Civ. P. 60(b)(4). A judgment is void if the court below

lacked subject-matter jurisdiction. *Textile Banking Co.*, 657

F.3d at 851; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 11 ("A

judgment may properly be rendered against a party only if the

court has authority to adjudicate the type of controversy

involved in the action.")

Relief under Federal Rule of Civil Procedure 60(b) is

"extraordinary, and special circumstances must justify granting

relief under it." *Moolenaar v. Gov't of the V.I.*, 822 F.2d 1342,

*In re: Prosser*
Civil No. 2011-113
Memorandum Opinion
Page 7

1346 (3d Cir. 1987). The party seeking such relief bears the burden of showing that it is warranted. *Id.* at 1347.

## IV.   ANALYSIS

The Prossers argue that the Bankruptcy Division lacks subject-matter jurisdiction over the underlying adversary proceeding because there was a bona fide dispute about the ownership of the property at issue. The Prossers rely on *Stern v. Marshall*, 131 S. Ct. 2594 (2011) in support of their argument.

In that case, the Supreme Court considered whether a bankruptcy judge could render a final judgment on a state-law counterclaim for tortious interference. *Stern v. Marshall* arose out of a long feud about the estate of J. Howard Marshall ("Howard Marshall"). Before Howard Marshall's death, his wife Vickie Lynn Marshall ("Vickie Marshall")--better known to the public as Anna Nicole Smith--filed suit in a Texas probate court to declare his living trust void. She claimed that Pierce Marshall, one of Howard Marshall's sons, had fraudulently induced Howard Marshall to enter into this living trust which excluded Vickie Marshall, when Howard Marshall had meant to give her half his property.

After Howard Marshall's Death, Vickie Marshall petitioned for bankruptcy. Pierce Marshall filed a complaint in that bankruptcy proceeding, claiming that Vickie Marshall had defamed

him by claiming he had engaged in fraud. Pierce Marshall thereafter filed a proof of claim for the defamation action, meaning that he sought to recover damages from Vickie Marshall's bankruptcy estate. Vickie Marshall filed a counterclaim for tortious interference with the gift she had expected from Howard Marshall.

The Bankruptcy Judge ultimately decided in Vickie Marshall's favor, awarding her over $400 million in compensatory damages and $25 million in punitive damages.

On appeal, the Supreme Court first considered whether the bankruptcy judge was statutorily authorized to render a final judgment on Vickie Marshall's counterclaim. "The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Stern*, 131 S. Ct. at 2603. Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). "Core proceedings include, but are not limited to" sixteen different types of matters enumerated by Title 28, Section 157(b)(2) of the United States Code ("Section 157(b)(2)"). *Id.* at § 157(b)(2). The statute specifically lists as a core proceeding "counterclaims by [a debtor's] estate against persons filing claims against the estate." *Id.* at § 157(b)(2)(C). The Court thus held that Vickie Marshall's counterclaim was a "core proceeding" and the

bankruptcy judge had the statutory authority to render a final judgment upon it.

The Court then went on to consider whether the exercise of that statutory authority was constitutionally permissible. The Court concluded that Vickie Marshall's claim could not be fully adjudicated by the bankruptcy judge. Within the confines of Article III of the Constitution, Congress could only assign to the bankruptcy judges those matters involving "public rights." These included matters which "can be pursued only by the grace of the other branches," no one that "historically could have been determined exclusively by" those other branches. *Stern*, 131 S. Ct. at 2614 (internal quotation marks omitted). However, "Vickie's claimed right to relief does not flow from a federal statutory scheme" and neither was it "completely dependent upon adjudication of a claim created by federal law." *Id.* (internal quotation marks omitted). The Court also noted that Vickie Marshall's claim was not "limited to a particularized area of the law" in which "Congress devised an 'expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination by an administrative agency specially assigned to that task.' " *Id.* (quoting *Crowell v. Benson*, 285 U.S. 22, 46 (1932)). Instead, the Court concluded that "this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a*

*court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." *Stern*, 131 S. Ct. at 2615 (emphasis original).

*Stern* does not foreclose the possibility that bankruptcy judges may enter final judgments in statutorily-defined core proceedings. The Court declined to say more than simply that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.*

In the present case, then, the Court's inquiry is a narrow one. First, the Court must determine whether Springel and Carroll's turnover action is a core proceeding. If so, the Court must then determine whether turnover actions involve public rights, so that they may be constitutionally adjudicated by bankruptcy judges.

## A.   <u>Statutory Jurisdiction</u>

Section 157(b)(2) lists as a core proceeding "orders to turn over property of the estate." *Id.* at § 157(b)(2)(E). Thus, as a general matter, turnover actions are core proceedings, and the Bankruptcy Division may statutorily enter final judgments in such actions.

*In re Prosser*
Civil No. 2011-113
Memorandum Opinion
Page 11

Notwithstanding Section 157(b)(2)(E), the Prossers argue
that the bankruptcy judge lacked jurisdiction over this turnover
action because there was a bona fide dispute about the ownership
of the property.

A turnover action lies only where the property in question
is "in the actual or constructive possession of the bankruptcy
court." *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990).
Constructive possession

> exists where the property was in the
> physical possession of the debtor at the
> time of the filing of the petition in
> bankruptcy, but was not delivered by him to
> the trustee; where the property was
> delivered to the trustee, but was thereafter
> wrongfully withdrawn from his custody; where
> the property is in the hands of the
> bankrupt's agent or bailee; where the
> property is held by some other person who
> makes no claim to it; and where the property
> is held by one who makes a claim, but the
> claim is colorable only.

*Id.* (quoting *Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426,
432-33 (1924)).

Under the 1898 Bankruptcy Statute, to remove a turnover
action from a bankruptcy judge's summary jurisdiction, an
adverse claim to property allegedly belonging to the debtor must
not be merely "colorable," but "real and substantial." *In re
Riding*, 44 B.R. 846, 851 (D. Utah 1984) (citing *Harrison v.
Chamberlin*, 271 U.S. 191, 193-94 (1926); *Sherr v. Sierra Trading
Corp.*, 492 F.2d 971, 976 (10th Cir. 1974); *Brouner v. Seligson*,

416 F.2d 706, 706 (2d Cir. 1969); *In re Warren*, 387 F. Supp.
1395, 1400 (S.D. Ohio 1975)). Under the 1898 Bankruptcy Act,
"[m]ere possession of the property, without any valid claim of
the title or interest, would not make one an adverse claimant,
nor was possession sufficient where the claim of the party in
possession was only colorable." *Riding*, 44 B.R. at 851 (citing
*Mueller v. Nugent*, 184 U.S. 1, 15 (1902)). Likewise, "the mere
refusal to surrender the property did not constitute an adverse
claim." *Id.*

Instead, to determine whether a claim is substantial or
merely colorable, under the 1898 Bankruptcy Act, the test to be
applied was whether the claimant's contention "discloses a
contested matter of right, involving some fair doubt and
reasonable room for controversy." *Harrison v. Chamberlain*, 271
U.S. 191, 193 (1926).

The Court of Appeals for the Third Circuit has held that
the principles applicable to determine jurisdiction over
turnover actions under the 1898 statute remain "perfectly
appropriate to distinguish between a 'core' turnover proceeding
and a 'non-core' state law contract action." *Beard*, 914 F.3d at
44 (citing *In re Century Brass Prods., Inc.*, 58 B.R. 838 (Bankr.
D. Conn. 1986); *St. George Island, Ltd. v. Pelham*, 104 B.R. 429
(Banrk. N.D. Fla. 1989); *Republic Reader's Serv. v. Magazine
Serv. Bureau, Inc.*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)).

The Third Circuit has not revisited this issue since the Supreme
Court's decision in *Stern*. However, the Court finds no reason--
and neither party suggests any--to deviate from the Third
Circuit's approach to distinguishing between a core turnover
proceeding and a non-core state-law claim.

In *Stern*, the first issue before the Court was whether a
counterclaim for tortious interference was a core proceeding.
The Court concluded that it was, under the plain text of Section
157(b)(2)(C). 131 S. Ct. at 2604.[2] Significantly, the Supreme
Court was presented with a different type of core proceeding--a
state-law counterclaim--than the one the Court is presented
today. Moreover, nothing in *Stern* suggests that the method by
which core turnover proceedings and non-core claims are
distinguished should be changed.

Here, the Prossers argue that the Bankruptcy Division erred
in concluding that Dawn Prosser, the wife of Jeffrey Prosser,
did not have more than a colorable claim in all of the artwork,
Estate Shoys, and North Shore Real Estate Corporation. The
Prossers do not challenge the bankruptcy judge's findings of

---

[2] The *Stern* Court noted a jurisprudential wrinkle regarding the
statutory distinction between core and non-core proceedings. The respondent
suggested it might be possible for a proceeding to be core and yet at the
same time not "aris[e] in" a Title 11 case or "aris[e] under" Title 11
itself. The respondent argued that a bankruptcy judge thus might exceed her
or his authority by adjudicating even a statutorily defined "core" proceeding
if it did not in fact arise in a Title 11 case or under Title 11. The Court
concluded that no such category of core proceedings existed. The Court thus
went on to address the constitutionality of bankruptcy judges ruling on
state-law counterclaims.

fact. Rather, they argue that as Dawn Prosser had an ownership
interest in these pieces of property, *ipso facto*, she had more
than a colorable claim to the entirety of these pieces of
property. They thus claim that these three pieces of property
were not in the constructive possession of the Bankruptcy
Division, and therefore beyond its jurisdiction over turnover
actions.

It is well-settled that Bankruptcy Judges may exercise
summary jurisdiction over property that is jointly owned by a
married couple even when only one of the spouses is the debtor.
Of course, the Bankruptcy Judge's jurisdiction is limited to
that portion of the property owned by the debtor. *See, e.g.*,
*United States v. Macchione*, 309 F. App'x 53, 56 (holding that in
turnover action seeking rental income from jointly owned real
property, bankruptcy judge had jurisdiction over only that half
of the income belonging to the debtor); *In re Marciano*, 372 B.R.
211, 214 (S.D.N.Y. 2007) (discussing turnover action seeking tax
refund resulting from jointly filed tax return); *In re Daniels*,
309 B.R. 54, 56 (Bankr. M.D. Fla. 2004) (discussing turnover
action seeking jointly owned cars).

Here, the Bankruptcy Division, after a lengthy trial,
determined that Jeffrey Prosser had a half-interest in the
artwork, an equitable half-interest in the Estate Shoys
property, and a half-interest in the North Shore Real Estate

Corporation. The bankruptcy judge then ordered the turnover of these half-interests. Significantly, the bankruptcy judge did not order turnover of the half-interests Dawn Prosser had in the respective pieces of property.

The Court is not aware of, and the Prossers have not identified, any authority for the proposition that an interest in a portion of some property is tantamount to a bona fide claim to the whole. Indeed, it would appear that the bankruptcy judge did precisely what was required: those portions of the disputed property over which Dawn Prosser had a bona fide claim were segregated from those portions over which she did not. Only those portions of the property over which Dawn Prosser had no bona fide claim were subject to a final judgment.

The Court therefore finds that the bankruptcy judge acted within her statutory authority in exercising jurisdiction over the property in which Jeffrey Prosser had an interest.

**B.   <u>Article III Jurisdiction</u>**

Having determined the Bankruptcy Judge was statutorily authorized to exercise jurisdiction over this matter, the Court must next determine whether Article III permits Congress to delegate such jurisdiction to the Bankruptcy Judges.

"[I]n general, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.' " *Stern*,

131 S. Ct. at 2609 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)). "When a suit is made of 'the stuff of the traditional actions at common law . . . ' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern*, 131 S. Ct. at 2609 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (Rehnquist, J., concurring in judgment)). "At the same time, there are matters, involving public rights, which may be presented in such form that the judicial power is capable of action on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." *Murray's Lessee*, 59 U.S. at 284.

As outlined above, a matter may involve public rights if it "flow[s] from a federal statutory scheme" or is "completely dependent upon adjudication of a claim created by federal law." *Stern*, 131 S. Ct. at 2614. (internal quotation marks omitted).

The Court of Appeals for the Third Circuit has yet to address the scope of the Supreme Court's decision in *Stern*. Those courts that have, however, are in widespread agreement "that *bona fide* turnover actions are permissible core proceedings because 'the exercise of exclusive jurisdiction over all the debtor's property' is one of the '[c]ritical features of

every bankruptcy proceeding.' " *In re Falzerano*, 686 F.3d 885,

887 (8th Cir. 2012) (quoting *In re Garcia*, 471 B.R. 324, 329

(Bankr. D.P.R. 2012)); *see also Central Va. Cmty. College v.

Katz*, 546 U.S. 356, 363–64 (2006) ("Critical features of every

bankruptcy proceeding are the exercise of exclusive jurisdiction

over all of the debtor's property, the equitable distribution of

that property among the debtor's creditors, and the ultimate

discharge that gives the debtor a 'fresh start' by releasing

him, her, or it from further liability for old debts."); *In re

SE Materials, Inc.,*467 B.R. 337 (Bankr. M.D.N.C. 2012); *In re

McCrory*, No. 10-36998 (MAW) 2011 WL 4005455 (Bankr. N.D. Ohio

Sept. 8, 2011). Although state law determines a debtor's

property interest in the property at issue, " 'the extent to

which a debtor's interest in property creates 'property of the

estate' for turnover is a question of federal law.' " *Demczyk v.

Mutual Life Ins. Co. (In re Graham Square, Inc.)*, 126 F.3d 823,

831 (6th Cir. 1997) (quoting *In re Amdura Corp.*, 167 B.R. 640,

644 (D. Colo. 1994)). Indeed, a turnover action "invokes the

[bankruptcy judge's] most basic equitable powers to gather and

manage the property of the estate." *Braunstein v. McCabe*, 571

F.3d 108, 122 (1st Cir. 2009).

The instant case does not involve a claim, counterclaim, or

cross-claim based entirely on state law, as in *Stern*. Instead,

it involves requests by the Trustees for the turnover of

property that allegedly belongs to the bankruptcy estate under
Title 11, Sections 541 and 542 of the United States Code. The
right to prosecute such a claim stems exclusively from federal
law. Indeed, it has no existence separate and apart from the
bankruptcy statutory scheme, since it presupposes the existence
of a bankruptcy estate to which property may be turned over.

For this reason, turnover actions necessarily involve a
relatively "particularized area of the law" in which "Congress
devised an 'expert and inexpensive method for dealing with a
class of questions of fact . . . .' " *Stern*, 131 S. Ct. at 2614
(quoting *Crowell v. Benson*, 285 U.S. 22, 46 (1932)). Although
the questions presented in turnover actions do raise ancillary
issues of state law, the ultimate inquiry is whether certain
property ought to be in the possession of the bankruptcy estate.
This is a specialized inquiry that is not presented to state
courts in the ordinary course. The Court thus finds no reason to
say that bankruptcy judges cannot constitutionally render final
judgments in turnover actions.

This is not to say that all turnover actions are
immediately within a bankruptcy court's jurisdiction. Where the
property sought is subject to a bona fide claim by a third
party, that claim, inasmuch as it is based in state law, must be
adjudicated by an Article III tribunal. *See Beard*, 914 F.2d at
444 (3d Cir. 1990). However, for the reasons discussed above,

the Prossers have not raised any such claim with respect to the property that was the subject of the adversary proceeding below.

### V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that the Bankruptcy Division acted within statutory and constitutional limits in adjudicating the underlying turnover action. Accordingly, it committed no error in denying the Prossers' motion for relief from judgment. The September 29, 2011, order of the Bankruptcy Division will be affirmed. An appropriate order follows.

S\\ _____
        **Curtis V. Gómez**
          **Chief Judge**